ALLAERT RENDERING, INC., Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Third District    No. 79-970

Opinion filed December 12, 1980.

John L. Parker and William C. Latham, both of John L. Parker & Associates, Ltd., of Chicago, for petitioner.

Tyrone C. Fahner, Attorney General, of Chicago (Anne Rapkin, Assistant Attorney General, of counsel), for respondents.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from a final order entered by respondent-appellee, Illinois Pollution Control Board (Board), finding certain violations by petitioner-appellant, Allaert Rendering, Inc. (Allaert), of the Illinois Environmental Protection Act (Act) and of regulations promulgated thereunder. Allaert operates a rendering plant which recycles and re-processes restaurant grease, scrap bones and fallen animals into useful byproducts such as animal feed and fertilizer. The alleged violations of the Act concern Allaert's wastewater treatment system.

On March 19, 1976, the Illinois Environmental Protection Agency (Agency) filed a complaint before the Board containing six counts charging Allaert with violations of the Act and regulations promulgated thereunder from April 30, 1974, to March 19, 1976. The first three counts charged Allaert with constructing and operating its wastewater treatment system without the permits required by the Act and the Board Rules and Regulations. The fourth count alleged that Allaert deposited contaminants on land so as to create a water pollution hazard in violation of the Act. The fifth count alleged that Allaert operated its treatment works in violation of the malfunction and spill provisions of the Act. The sixth count, alleging Allaert operated its treatment works without a certified operator, in violation of the Act, was dropped.

An enforcement hearing was held on November 8 and 9, 1978, and on September 6, 1979, the Board adopted an opinion holding that Allaert was guilty of the first five counts of the complaint and dismissing the sixth count. The Board ordered Allaert to pay a civil penalty of $3,000, to divert its wastewater facility from its existing treatment facility to the Carbon Cliff, Illinois, sewer system, to drain the lagoon it was using as its treatment facility, and to post a performance bond in the amount of $127,000 as assurance that Allaert would do the above.

Allaert's first issue on appeal is whether or not the Board's decision is contrary to the manifest weight of the evidence. Allaert contends that the Agency failed to prove that Allaert violated section 12(a) of the Act.

Section 12(a) reads:

No person shall:

"(a) Cause or threaten or allow the discharge of any contami-

nants into the environment in any State so as to cause or tend to cause water pollution in Illinois, either alone or in combination with matter from other sources, or so as to violate regulations or standards adopted by the Pollution Control Board under this Act." Ill. Rev. Stat. 1977, ch. 111½, par. 1012(a).

The Board found Allaert guilty of threatening to discharge contaminants into the environment so as to cause or tend to cause water pollution. Allaert argues that since the Board found that Allaert had not actually caused any water pollution, the Board was precluded from finding that Allaert threatened to pollute. We disagree.

In 1973, Allaert excavated a lagoon on a field, down to the bedrock, to receive the wastewater discharged from its rendering plant at the rate of approximately 30,000 gallons per day. This wastewater is contaminated with suspended solids, oil and grease. The wastewater is first discharged into three 1,000 gallon septic tanks and then into a 1,500 gallon tank. After passing through the final tank the water passes into the lagoon where it percolates into the ground. This method is termed an "infiltration-percolation" system and is intended to reduce the concentration of contaminants. The plant and its wastewater system are located in the flood plain of the Rock River, and the lagoon has on occasion been completely inundated by floodwaters.

Allaert's contention that the Agency failed to prove Allaert's lagoon threatened pollution rests on two premises—(1) that the Agency failed to show the lagoon system contains highly contaminated wastewater, and (2) that since the Rock River didn't flood the lagoon during the time covered by the complaint, the Agency failed to show any threat. Neither premise is correct.

■█ In considering Allaert's initial premise, we find sufficient evidence on which the Board could find the wastewater in the lagoon to be highly contaminated. In February 1976, Allaert applied to the Agency for an operating permit for its system. In this application, Allaert stated that samples of the wastewater taken from the lagoon contained high levels of contamination. Further, Allaert's consulting engineer, William Karlovitz, testified unambiguously that the water tested and reported in the permit came from a pipe which discharged into the lagoon after it left the final septic tank. Allaert presented no evidence at the hearing which cast doubt on the correctness of the information in its permit application or Karlovitz' testimony. In view of such evidence, the Board could properly find the lagoon contained highly contaminated water.

■█ Allaert's second premise is equally unsupportable. Allaert contends that because no flooding took place during the time specified in the complaint, the Agency failed to prove any threat to the surface waters in the area. This argument ignores the fact that evidence was introduced

showing that the Rock River did in fact flood the area containing the lagoon in 1973 and again in 1978. These floods are more than sufficient to show that there was a threat that flooding could occur during the 1974 to 1976 period specified in the complaint. Simply because flooding did not actually occur does not mean that there wasn't a definite danger of flooding and resultant contamination.

■■ Appellant's reliance on *City of Des Plaines v. Pollution Control Board* (1978), 60 Ill. App. 3d 995, 377 N.E.2d 114, and *Rocke v. Pollution Control Board* (1979), 78 Ill. App. 3d 476, 397 N.E.2d 51, is misplaced. Both cases are distinguishable on their facts. In both cases, the court held that the project hadn't been started and there was no way of telling whether or not the project threatened to pollute in contravention of the Act. In the instant case, the combination of highly contaminated water sitting in a lagoon which has in fact flooded twice in six years demonstrates a definite danger of pollution. Therefore, the Board's finding of a threat of pollution to surface water was not against the manifest weight of the evidence. Because we find the threat to the surface water to be a violation of the Act, we need not reach the question of whether there was a threat to the ground waters below or adjacent to the lagoon.

■■ Allaert's next issue is whether or not the complaint was sufficient and whether or not the Board's findings were consistent with the allegations of the complaint. Allaert contends the five counts which the Board found Allaert had violated were insufficient because they do not allege facts indicating that Allaert had caused water pollution or that Allaert had created a threat of water pollution. Allaert is correct that the complaint does not allege that Allaert caused water pollution. However, contrary to Allaert's contention, such an allegation is not necessary. The first three counts simply allege that Allaert constructed and operated its wastewater treatment system without the permits required by the Act and Board Rules and Regulations. Facts were alleged so that these counts are sufficient. The fourth count alleged that Allaert deposited contaminants on land so as to create a water pollution hazard. As discussed above, it is not necessary to show actual pollution in order to show a threat of pollution. Therefore, the failure to allege actual pollution does not render this count insufficient. The fifth count charges Allaert with operating its treatment system in violation of the malfunction and spill provisions of the Board Rules and Regulations. We see no reason to allege actual pollution in this count and find this count sufficient.

Allaert's next issue is whether the Board's refusal to grant Allaert's application for nondisclosure denied Allaert a full and fair hearing. In its request for documents of January 19, 1977, the Agency sought "1. All financial records, including income tax returns, income statements and

balance sheets for Respondent for the years 1970 through and including 1976." Allaert opposed the motion on the basis that the request was overly broad and that it sought confidential information subject to limited disclosure to Board members. On February 2, 1977, the hearing officer required production of the documents. On April 7, 1977, the hearing officer entered an order prohibiting Allaert from introducing any evidence relating to the issue of economic reasonableness because Allaert had failed to produce the documents and had not filed its application for a protective order under section 7 of the Act. On April 25, 1977, Allaert filed an application for nondisclosure with the Board under section 7 of the Act. The Board denied the application on the basis that "a blanket grant of non-disclosure for all financial records is not justified." Later motions for reconsideration were also denied. Allaert contends that because the Board's denial of protection from nondisclosure led to the Board's imposing sanctions denying Allaert the ability to present evidence regarding the economic unreasonableness of complying with the Agency's request, Allaert was denied due process. We disagree.

Rule 107 of the Board's Procedural Rules provides in pertinent part:

> "(b) All such files shall be open to reasonable public inspection and copying, except material stamped by Board Order, 'Not Subject to Disclosure.' Only the following materials may be so stamped by the Board * * *

> 5. income and earnings data when not an issue in the proceeding."

In the instant case, Allaert placed its income and earnings data in issue when it attempted to introduce them as evidence on economic reasonableness in the case. Therefore, it did not fall within the exception, and the Board acted properly in denying Allaert's application for nondisclosure. In imposing sanctions, the hearing officer clearly had the power to prohibit the introduction of Allaert's financial records bearing on the issue of economic reasonableness. However, we note that Allaert's financial records were of limited, if any, relevance to the issue of economic reasonableness.

Section 33(c) of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1033(c)) states that economic reasonableness is determined by looking at all the facts, including, but not limited to:

> "(i) The character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people;

> (ii) The social and economic value of the pollution source;

> (iii) The suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved; and

(iv) The technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source."

It is readily apparent from the statute that it is factors other than a corporation's income which are singled out as being determinative of economic reasonableness. Therefore, the sanction imposed by the hearing officer—not permitting Allaert to present any evidence on the issue of economic reasonableness—may have been too broad. However, Allaert failed to make any offer of proof as to other evidence which might have shown economic unreasonableness, and there is nothing in the record which indicates what additional evidence might have been offered. In this absence there is nothing on which we can find error.

Allaert's next contention is that the Board erred in finding that Allaert had violated the Act in building and operating its treatment system without the required permits. Allaert argues that the agency wrongfully denied the permits, then wrongfully denied Allaert an opportunity to show that the Agency's permit denial was unjustified and, therefore, the Board cannot find a violation of the Act for not having a permit. Such an argument is fallacious.

Allaert constructed its lagoon in 1973 without applying for or receiving an Agency construction permit prior to construction. Allaert then built its septic tanks over a period from 1973 to 1975 without applying for or receiving the required permits. In February 1976 Allaert applied for a permit, which application was denied. Another application in March 1977 was also denied. Thus, the evidence shows that Allaert illegally constructed and operated its wastewater treatment system without permits prior to February 1976.

■■ Regarding the period from February 10, 1976, the date of the first permit application, to March 19, 1976, it is equally clear that Allaert illegally operated its system without a permit. One cannot defend oneself in an enforcement action alleging failure to receive a permit by claiming that the permit application was wrongly denied. The Act provides a means to protest the denial of a permit application. Under section 40 of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1040), if the Agency denies a permit, the applicant may petition for a hearing before the Board to contest the decision of the Agency. Rule 502(a)(2) of the Board's Procedural Rules provides that the petition be filed within 45 days of the date of mailing of the Agency's final decision. No petition for review of the permit denials was ever filed by Allaert. Therefore, the record is clear that Allaert did in fact illegally operate its treatment system without a permit from the time the lagoon was constructed to February 1976 and from February 1976 to March 19, 1976.

■■ Allaert's next issue is whether the Board exceeded its authority in directing Allaert to post a performance bond of $127,000 as assurance that Allaert would complete its present plan to divert its wastewater from its existing treatment facility to the Carbon Cliff sewer system by December 15, 1979, and that Allaert would drain its lagoon through the Carbon Cliff sewer system by December 31, 1979, or as soon as practicable thereafter. Allaert argues that this is not really a performance bond, but a mandatory injunction carrying a $127,000 penalty if either of the above directives is not carried out. We disagree.

Section 33 of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1033) provides that after the hearing, the Board shall issue and enter such final order as it deems appropriate. This order may include a direction to cease and desist from violations of the Act or the Board's rules and regulations. The statute further provides that if the order includes a reasonable delay during which to correct a violation, the Board may require the posting of a performance bond.

In the case at bar, the Board, pursuant to section 33, ordered Allaert to cease and desist from violating the Act and to do so by Allaert's own plan to divert the wastewater to the Carbon Cliff sewer system. Since it had taken Allaert five years to implement a competent compliance plan, the Board required Allaert to post a performance bond. Allaert's estimated cost of compliance was $120,000. The Board required Allaert to post a bond of $127,000. In view of Allaert's various delays over five years, we do not find the requirement of a performance bond to be an abuse of the Board's discretion. Neither do we find the amount of the bond to be an abuse of discretion.

■■ Allaert's final issue is whether the Board erred in ordering civil penalties. We find no error. Allaert violated the provisions of the Act. The Act authorizes the imposition of civil penalties where there has been a violation. (Ill. Rev. Stat. 1977, ch. 111½, par. 1033.) The Board stated that it found the amount of the fines to be "* * * the minimum necessary to ensure future compliance with the Act and Board regulations * * *." We find no abuse of discretion in the imposition of or amount of the civil penalties.

For the abovementioned reasons, the order of the Illinois Pollution Control Board is affirmed.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.