DARREL SLAGER, d/b/a Rapid Liquid Waste and Rubbish Removal, Petitioner, *v*. THE POLLUTION CONTROL BOARD *et al.*, Respondents.

First District (4th Division)    No. 80-697

Opinion filed May 7, 1981.

John L. Parker, of Chicago, for petitioner.

Tyrone C. Fahner, Attorney General, of Chicago (George W. Wolff and Mary Jo Murray, Assistant Attorneys General, of counsel), for respondents.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

This is an appeal from an order of the respondent, the Illinois Pollution Control Board (Board), finding that the petitioner, Darrel Slager, violated section 21(f) of the Illinois Environmental Protection Act (Act) (Ill. Rev. Stat. 1977, ch. 111½, par. 1001 *et seq.*). Section 21(f) provides that "[n]o person shall * * *[d]ispose of any refuse * * * except at a site or facility which meets the requirements of this Act and of regulations thereunder." (Ill. Rev. Stat. 1977, ch. 111½, par. 1021(f).) Slager, the sole proprietor of Rapid Liquid Waste & Rubbish Removal (Rapid Liquid Waste), contends on appeal that: (1) he was denied the right to a full and fair hearing; (2) the decision of the Board is against the manifest weight of the evidence; (3) the Agency complaint was insufficient at law; and (4) the Board erred in assessing a monetary penalty.

On February 3, 1978, the Illinois Environmental Protection Agency (Agency) filed a complaint before the Board. The Board held enforcement hearings during which two Agency employees, Kenneth Bechely and Joseph Petrilli, testified that they saw Rapid Liquid Waste trucks dumping sludges and liquids at a portion of the Paxton landfill known as Paxton No. 2. They saw drivers of trucks bearing the logo Rapid Liquid Waste & Rubbish Removal back up to the face of the landfill, open a valve on the back of the trucks, and let the liquid contents flow onto the site. Bechely stated that during the time period covered by the complaint, Paxton No. 2 did not have an Agency permit. There was also evidence that a letter had been sent to Slager informing him that the landfill lacked a permit.

William Petrich was president of the Environmental Clearing House Organization, a service which provides technical consultation to the waste industry. He testified that he had been doing business with Slager for the

past three years, that Slager was the owner and operator of Rapid Liquid Waste, and that the drivers of the Rapid Liquid Waste trucks were employed by Slager. Petrich further indicated that certain documents which he kept in the regular course of business showed that Rapid Liquid Waste disposed of liquid waste at the Paxton landfill.

Slager presented testimony by Agency employees concerning the procedural requirements for obtaining a disposal site permit. These witnesses were questioned extensively about the Agency definitions of "liquid waste," and "hazardous waste." Slager also attempted to ascertain which individuals were directly involved in the decision to issue a complaint against Rapid Liquid Waste.

The Board then issued an order finding that Slager had violated section 21(f) of the Act by disposing of refuse at an unpermitted site. The Board assessed a $1000 penalty against Slager.

Slager first contends that he was denied the right to a full and fair hearing as a result of (1) the improper denial of his application for nondisclosure, and (2) certain due process violations which occurred at the hearing.

In its request for documents, the Agency sought "the financial records, statements, documents, and reports kept by respondent" for the period from January 1, 1976, through March 13, 1978. Slager initially opposed this request on the basis that it was overly broad and that it sought confidential information subject to limited disclosure to Board members. However, when the hearing officer overruled Slager's objection, he agreed to furnish the information on the condition that it be protected from public disclosure. Slager filed an application for nondisclosure with the Board, claiming that the records involved were "trade secrets" and "confidential data." The Board denied the application. The Agency then made a motion for sanctions against Slager as a result of his failure to produce the requested financial records. The Board granted this motion, barring Slager from presenting any testimony or defense relating to his financial condition or based upon his financial records.

■■ The Board denied the application on the basis that Slager failed to justify the classification of the documents in any of the categories listed in Procedural Rule 107(b), which provides as follows:

"(b) All * * * files shall be open to reasonable public inspection and copying, except material stamped by Board order, 'Not Subject to Disclosure.' Only the following materials may be so stamped by the Board:

1. Information which constitutes a trade secret;
* * *
4. Information concerning secret manufacturing processes, or confidential data submitted by any person under the Act; and

5. Income and Earnings Data *when not an issue in the proceeding.*" (Emphasis added.)

In his application for nondisclosure, Slager claimed that his financial records were "trade secrets" and "confidential data." It is clear, however, that the financial records of a waste hauling business do not fall within the Act's definition of trade secrets in that they are not "scientific or technical information, design, process including a manufacturing process, procedure, formula or improvement or business plan * * *." (Ill. Rev. Stat. 1977, ch. 111½, par. 1003(q).) Also, Slager offered no explanation of how disclosure of this "confidential data" would harm him or put him at a competitive disadvantage. Although income and earnings data may be protected from disclosure when it is not an issue in the proceeding, Slager admitted that he intended to introduce this data as evidence bearing on economic reasonableness under section 33(c)(iv) of the Act. By doing so, Slager would clearly be putting this data in issue. (See *Allaert Rendering, Inc. v. Pollution Control Board* (1980), 91 Ill. App. 3d 153, 414 N.E.2d 492.) We therefore conclude that the Board acted properly in denying the application for nondisclosure.

Slager also claims that certain due process violations operated to deny him a fair hearing. Underlying Slager's argument that he was denied due process is the contention that there was no improper conduct on his part in disposing of allegedly hazardous waste in Paxton No. 2. Rather, it was Paxton's duty to obtain a proper permit, and Slager cannot be held responsible for its failure to do so. Slager also maintains that his lack of knowledge concerning Paxton's permit status and the fact that Paxton ultimately did obtain an Agency permit should be taken into consideration in determining his culpability.

■■ There is no citation of authority which would serve to exonerate Slager under these circumstances. Section 21(f) provides that, "[n]o person shall * * * [d]ispose of any refuse * * * except at a site or facility which meets the requirements of this Act and of regulations thereunder." (Ill. Rev. Stat. 1977, ch. 111½, par. 1021(f).) This language clearly imposes a duty upon Slager to determine the capacity of a site to receive a particular type of waste. If he acted without satisfying that duty, we do not believe it is a violation of due process to hold him legally responsible.

Slager further maintains that his right to due process was violated by the Board's refusal to continue the hearing until a decision was reached in the co-pending enforcement case against Paxton. He argues that in the absence of such decision, the Board could not properly conclude that Paxton was operating in violation of the Act.

■■ We believe this argument to be without merit. The Agency alleged Paxton's noncompliance with the Act and regulations as an element of its cause of action against Slager. Based on the evidence before it, the Board

could properly decide this issue independently of the outcome of the suit against Paxton.

Slager next contends that the Board's decision is contrary to the manifest weight of the evidence. Specifically, he argues that: (1) the Agency did not prove that the trucks which were seen disposing of liquid waste were his property or were in any way under his control, and (2) the Board failed to take into consideration the necessary factors enumerated in section 33(c) of the Act.

To warrant reversal on appeal, an Agency decision must be against the manifest weight of the evidence. (*Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 307 N.E.2d 371.) A decision will be found to be against the manifest weight of the evidence only when an opposite conclusion is "clearly evident." *Keen v. Police Board* (1979), 73 Ill. App. 3d 65, 391 N.E.2d 190.

■■ We believe that the evidence before the Board was sufficient to support its finding that Slager violated the Act. Two Agency witnesses, Kenneth Bechely and Joseph Petrilli, testified that they saw trucks bearing the logo Rapid Liquid Waste & Rubbish Removal disposing of liquids and sludges at Paxton No. 2. They saw the drivers back the trucks up to the face of the landfill, open a valve on the back of the trucks, and let the liquid contents flow onto the site. William Petrich testified that he had been doing business with Slager for the past three years and that Slager was the owner and sole proprietor of Rapid Liquid Waste. Petrich further stated that his business records showed that Rapid Liquid Waste disposed of liquid waste at the Paxton site. Slager introduced no evidence at the hearing to contradict this testimony.

Slager also claims that the Board's decision is against the manifest weight of the evidence because it failed to take into consideration the factors enumerated in section 33(c) of the Act. Section 33(c) provides as follows:

"In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved including, but not limited to:

(i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people;

(ii) the social and economic value of the pollution source;

(iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved; and

(iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits

resulting from such pollution source." (Ill. Rev. Stat. 1977, ch. 111½, par. 1033(c).)

Slager argues that because the Agency failed to introduce evidence concerning each of these factors, the Board could not properly consider them in reaching its decision. Slager cites *Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill. 2d 290, 319 N.E.2d 794, for the proposition that the Agency bears the burden of introducing evidence on each of the section 33(c) factors.

■■ In *Processing & Books v. Pollution Control Board* (1976), 64 Ill. 2d 68, 351 N.E.2d 865, the Illinois Supreme Court clarified its holding in *Incinerator*. The court stated that once the Agency establishes a *prima facie* showing of a violation, the burden shifts to the respondent to introduce evidence relating to the reasonableness of the respondent's conduct. Therefore, it was Slager's responsibility to introduce evidence concerning the four section 33(c) criteria.

Further, the record clearly shows that the Board considered these factors in reaching its decision. The final order of the Board refers specifically to the character and degree of injury involved, stating that "liquid wastes are a particularly great and unknown hazard to future generations." The order also mentions the second factor, noting that although "there is social and economic value to being able to dispose of unwanted wastes * * * [this value is] diminished when there is a lack of planning for disposal of the wastes." With respect to the suitability of the pollution source to the area, the Board acknowledged that Paxton No. 2 ultimately did get an Agency permit. Finally, the Board found that Slager was notified of properly licensed landfills and that it was technically and economically feasible for him to comply with the requirements of the Act.

Slager next contends that the Agency complaint was insufficient at law primarily because it incorrectly alleged that the definition of refuse in section 3(k) of the Act included "hazardous wastes, liquid wastes and sludges." Instead, refuse was defined as "garbage and other discarded materials." Since the Agency presented no proof that the matter hauled by Slager was either garbage or discarded material, the complaint failed to properly delineate the conduct which allegedly violated the Act.

■■ A complaint in an administrative proceeding will be deemed sufficient if it reasonably apprises the party of the case against him so that he will be able to intelligently prepare his defense. (*Talman v. Department of Registration & Education* (1979), 78 Ill. App. 3d 450, 397 N.E.2d 151.) The complaint here specifically informed Slager of the manner in which his conduct was alleged to violate the Act. We therefore believe that it was sufficient to apprise Slager of the nature of the claim against him.

Slager's last contention is that the Board erred in assessing a monetary penalty in the absence of a showing of actual environmental harm. He

also argues that the $1000 penalty was abusive and totally unrelated to the seriousness of the alleged violation.

The Act authorizes the imposition of civil penalties to provide a method to aid in enforcement of the Act. (Ill. Rev. Stat. 1977, ch. 111½, par. 1033(b).) Although these penalties should be reasonably related to the seriousness of the violation, the Board is given broad discretion in making such assessments. *Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 326 N.E.2d 406.

■■ In its final order, the Board found that Slager's "continued disposal of liquid wastes at [Paxton No. 2] after notice of the site's violations is a blatant violation of the Act." The Board stated that liquid wastes pose an especially great hazard to the environment because of their tendency to spread quickly and react with other wastes. One of the reasons for the permit requirement is to enable the Agency to supervise economically safe disposal methods for such substances. In determining the seriousness of the violation, the Board also considered evidence that the Agency sent Slager a letter informing him that Paxton No. 2 was operating without a permit. The Board found that Slager continued to commit violations in conscious disregard of this warning from the Agency. Considering these factors, we do not believe that the Board abused its discretion in imposing a $1000 penalty against Slager.

For the foregoing reasons, the order of the circuit court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.