DOUGLAS TRANSIT, INC., *et al.*, Plaintiffs-Appellants, v. THE ILLINOIS COMMERCE COMMISSION, Defendant-Appellee (A & B Freight Lines, Inc., *et al.*, Intervenors-Appellees).

Fourth District   No. 4—87—0233

Opinion filed December 30, 1987.—Rehearing denied January 29, 1988.

Robert T. Lawley, of Routman & Lawley, Ltd., of Springfield, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Douglas Trabaris, Special Assistant Attorney General, of Chicago, of counsel), for appellee Illinois Commerce Commission.

Carl L. Steiner and Paul A. Gajewski, both of Axelrod, Goodman, Steiner & Bazelon, of Chicago, for appellees A & B Freight Lines, Inc., Holland Motor Express, Inc., and Rudolph's Express Co.

JUSTICE McCULLOUGH delivered the opinion of the court:

Douglas Transit, Inc., and Hunt Super Service, Inc., appeal a circuit court order affirming a decision of the Illinois Commerce Commission (Commission). The Commission granted their joint petition to transfer Douglas' certificate of public convenience and necessity (certificate) but found a large percentage of Douglas' prior hauling activity was outside of the scope of its certificate as originally granted. It found other authority had been abandoned.

Douglas Transit, Inc. (Douglas), and Hunt Super Service, Inc. (Hunt), argue: the Commission improperly modified the scope of the certificate in a transfer proceeding; Douglas' right to notice and an opportunity to be heard on the interpretation issue were violated; the Commission misinterpreted *Brink's, Inc. v. Illinois Commerce Comm'n* (1982), 108 Ill. App. 3d 186, 439 N.E.2d 1; the Commission improperly applied the doctrine of *ejusdem generis*; and the Commission is estopped from limiting the scope of the certificate. The Commission asserts Douglas is collaterally estopped from relitigating the scope of its certificate.

We reverse and remand.

On May 16, 1983, Douglas and Hunt applied for a transfer of Douglas' authority to haul intrastate goods. Douglas and Hunt had entered an agreement for the sale of the certificate. On February 4, 1983, Douglas filed a bankruptcy petition. During the second week of

February 1983, Michael Smith started dispatching trucks at the request of Douglas' attorney.

Notice of public hearings on the proposed transfer was published in various newspapers. Douglas' common carrier certificate authorized it to transport "livestock, farm products, feed, coal, merchandise, furniture and commodities general within a fifty (50) mile radius of the Post Office at Newman, Illinois, and to transport such property to or from any point outside such authorized area of operation for a shipper or shippers within such area; also, livestock, farm products, feed, coal, merchandise, furniture and commodities general to or from any point or points within the State of Illinois."

Several firms intervened, objecting to the transfer and raising the scope of the certificate in their arguments as an issue. Gary Armstrong, Douglas' president, testified that in February 1983, Douglas filed a bankruptcy petition. After the petition had been filed, Douglas agreed to sell to Hunt. Douglas and Hunt had filed for a temporary permit, which the Commission granted. Armstrong prepared an abstract of shipping for the hearing. The abstract was a sampling of the type of freight hauled by the firm during the two years preceding the transfer petition. Armstrong testified that Douglas had transported soybean meal, liquified petroleum gas, all grades of rock, anhydrous ammonia, coal, all types and grades of stone, foodstuffs, bulk materials, solvents, plastic bottles, dry fertilizer, dairy products, boring machines, dirt, magazines, corn gluten meal, sand, agricultural limestone, gravel, pallets, tool sheds, road salt, books, liquid fertilizer, garden mulch, lactic acid, cylinders, shortening, grain, road oil, cold patch asphalt, pig iron, pipe, paper rolls, seed corn, dryers, bedding rock, miscellaneous wide loads, junk, and dust. The sampling was merely representative of the types of materials Douglas hauled.

The Commission approved the transfer. However, in a section of the order entitled "Interpretation of Transferor's Common Carrier certificate," it reviewed the *Brink's* decision. The Commission noted that the common carrier authority held by Douglas had been granted pursuant to the grandfather provision of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1983, ch. 95½, par. 18—305). The Commission further noted the appellate court held Douglas' certificate did not authorize transportation of armored car commodities. The Commission then stated that *Brink's* applied in the instant proceeding. Based on the doctrine of *ejusdem generis*, it determined that grain, feed, coal, fertilizer, seed, dairy products, foodstuffs, plastic bottles, boxes, pallets, tool sheds, books, boring machines, magazines, cylinders, pig iron, pipe, and paper rolls were within the scope of Douglas' hauling

authority as originally granted in its certificate. It found the remaining commodities listed in the abstract of shipment were not similar to items listed in the certificate and were, thus, outside the scope of the operating authority. Then, the Commission analyzed activities which Douglas had engaged in in the prior two years as evidenced in the shipping abstract. It determined that Douglas had abandoned its authority to transport any commodities which it had not specifically transported in the prior two years which had been determined to be within the scope of its certificate.

A brief review of the relevant statutory provisions is necessary to an understanding of our disposition. In order to transport goods in Illinois, each carrier must be licensed and regulated by the State. Section 18—305 of the Code provides for the automatic issuance of a certificate to firms which were operating under the former trucking act. The section provides that authorization is limited to services actually performed under the former law. Ill. Rev. Stat. 1983, ch. 95½, par. 18—305.

Section 18—305(b) of the Code provides:

"If after hearing on complaint of any interested party, or on its own motion, it is shown that the certificate or permit issued by the Commission pursuant to the provisions of paragraph (a) of this Section does not conform to the operating rights actually exercised by the holder of such certificate or permit issued pursuant to the provisions of 'The Illinois Truck Act', *** then, the Commission shall promptly modify such certificate or permit so that it shall conform to the authority and actual use under such Act." Ill. Rev. Stat. 1983, ch. 95½, par. 18—305(b).

Section 18—307 of the Code provides that after notice, the Commission on its own motion may amend, suspend, or revoke the authority granted in any certificate for failure to comply with any provision of the Code. Ill. Rev. Stat. 1983, ch. 95½, par. 18—307.

Section 18—309 of the Code provides a procedure for the transfer of operating authority. Section 18—309(3) of the Code states:

"When a transaction is proposed under this section, the carrier or the person seeking authority therefor shall present an application to the Commission. The application shall contain a copy of the contract, including the terms of the proposed transaction, and an abstract of shipments performed by the transferring party within the last year prior to the date of such contract. The Commission shall, after due notice, set the application for a public hearing to determine whether the findings specified below may properly be made. *When the Commis-*

*sion finds that* (a) *the purchaser or lessee is fit, willing and able,* (b) *that the operations of the proposed seller or lessor have not been abandoned, suspended, discontinued or dormant and* (c) *that the transaction proposed will be consistent with the public interest and the declaration of policy set forth under Section 18—101, it shall enter an order approving and authorizing the transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable.*

In determining whether the operations of the proposed seller or lessor have not been abandoned, suspended, discontinued or dormant, the Commission shall only consider the operations of the transferring party performed within the last 2 years prior to the date of such contract \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 95½, par. 18—309(3).

The instant proceedings were brought pursuant to section 18—309 of the Code. Douglas argues the Commission erred as a matter of law in interpreting the scope of the grandfather certificate in the transfer proceeding. The Commission argues that the fact the certificate was a grandfather certificate is irrelevant since the instant case involved a transfer application under section 18—309 of the Code. The Commission asserts that it did not limit its analysis to *Brink's* but found a dormancy of operations. Therefore, it correctly modified the Douglas certificate. The intervenors argue that the manner in which the certificate has been issued should have no effect on its subsequent transfer under section 18—309.

The Commission's order reveals that it first interpreted the scope of the original authority granted Douglas Trucking, Inc. Then, it assessed the operations which it determined were within the scope of the authority as it had limited that authority. In the instant case, the intervenors had argued the original grandfather certificate did not provide for the transportation of general commodities. They asserted the language of the grandfather certificate should be limited to the specific items named in the certificate and similar commodities. Since they were asking for an interpretation of the certificate's language for all purposes, the action should have been asserted under the provisions of section 18—305(b). Evidence should have been presented concerning the actual operations of Douglas under the former trucking act.

However, no evidence of this nature was presented by Douglas nor was it specifically requested by the Commission. The hearings took place in the context of a section 18—309 transfer petition. As such, three issues were by statute before the Commission: (a) whether

the purchaser was fit, willing, and able; (b) whether the operations of the seller had been abandoned, suspended, discontinued, or rendered dormant; and (c) whether the transaction was consistent with the purposes of the Code. (Ill. Rev. Stat. 1983, ch. 95½, par. 18—309(3); *Jenkins Truck Line, Inc. v. Illinois Commerce Comm'n* (1981), 96 Ill. App. 3d 650, 422 N.E.2d 640; *Salon Trucking Co. v. Illinois Commerce Comm'n* (1980), 84 Ill. App. 3d 604, 406 N.E.2d 46.) The scope of the certificate thus is only an issue to the limited extent of finding dormancy, suspension, discontinuation, or abandonment of operations.

In the instant case, the Commission by interpreting the language of the certificate used and determining what the intent of the Commission was in originally granting the authority placed the scope of the authority in issue for all purposes. This should not have been done in the context of a transfer petition.

Douglas next argues that it was not adequately notified that the interpretation of the language of the certificate was in issue. The Commission argues Douglas had actual notice of the issue through the other parties' arguments. It then argues that Douglas should have been aware that the scope of its operating authority was in issue for all purposes because of the section 18—309 proceeding. We disagree.

■■ Basic concepts of notice and an opportunity to be heard apply to administrative proceedings. (*Mahonie v. Edgar* (1985), 131 Ill. App. 3d 175, 476 N.E.2d 474; *Caterpillar Tractor Co. v. Pollution Control Board* (1977), 48 Ill. App. 3d 655, 363 N.E.2d 419.) Parties should also be apprised of the nature of the proceeding. (*Slager v. Pollution Control Board* (1981), 96 Ill. App. 3d 332, 421 N.E.2d 929.) The record supports Douglas' contention that it did not receive notice from the Commission that the Commission would interpret the language of the original operating authority granted Douglas. The evidence admitted in the instant case could have been different if such notice were provided. Therefore, this case is distinguishable from *Salon Trucking Co. v. Illinois Commerce Comm'n* (1980), 84 Ill. App. 3d 604, 406 N.E.2d 46.

The parties next raise several issues involving *Brink's, Inc. v. Illinois Commerce Comm'n* (1982), 108 Ill. App. 3d 186, 439 N.E.2d 1. We will address the issues because they may arise on rehearing. The parties essentially argue that the Commission either misinterpreted or correctly interpreted this court's decision in *Brink's*. Douglas argues the Commission interpreted *Brink's* too broadly. It maintains that after misinterpreting *Brink's*, the Commission mistakenly found a portion of Douglas' operation was outside the scope of its authority and part of the remaining authority was dormant. The Commission argues

that it correctly applied *Brink's*. Then, it argues that the record supports its modification of Douglas' operating authority because the authority was dormant. The intervenors argue the Commission did not interpret Douglas' certificate but merely applied the *Brink's* decision.

In *Brink's*, this court held that Douglas' certificate did not authorize the carrying of armored car commodities. (108 Ill. App. 3d at 191, 439 N.E.2d at 4.) The Douglas' certificate, identical to that interpreted in the instant case, authorized it to carry "commodities general." It is a grandfather certificate. In 1978, Douglas started an armored car division and began to solicit business. Brink's, Inc., brought an action alleging that armored car commodities were not within the scope of the grandfather certificate. The parties stipulated that Douglas had never transported such commodities before. The Commission argued that "commodities general" meant all commodities. Brink's, Inc., argued the phrase "commodities general" should be restricted to the class of commodities described by the specific words preceding it, using the doctrine of *ejusdem generis*.

■ The court, on appeal, noted that nothing in the record indicated the construction rule should not apply to the certificate. The court stated:

> "The words 'livestock, farm products, feed, coal, merchandise, furniture' in the certificate would be rendered superfluous if the phrase 'commodities general' was interpreted to include all commodities. On the other hand, if the phrase is interpreted as including all commodities within the class of commodities described by the particular words, then all the words in the certificate can be given effect." 108 Ill. App. 3d at 190, 439 N.E.2d at 3.

In the instant case, the Commission correctly noted the limited holding of *Brink's*. It then, in essence, applied the rule of *ejusdem generis* to render the words "commodities general" superfluous. The doctrine of *ejusdem generis* is advisory. (*Brink's*, 108 Ill. App. 3d 186, 439 N.E.2d 1.) It provides that where a clause specifically describes classes of persons or things and then uses general language, the general language is limited to the classes similar to those specifically described. *Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton* (1985), 105 Ill. 2d 389, 475 N.E.2d 536; *People v. McBrien* (1986), 144 Ill. App. 3d 489, 494 N.E.2d 732.

In essence, the Commission did not address its intent when the general language was used. Douglas did not present any evidence or argument on that intent. Additionally, no evidence was admitted establishing the types of commodities transported under the former act.

Therefore, the parties could not have given the issue full consideration before applying the construction rule. We note that the *Brink's* decision supports the position that all of the commodities transported prior to armored car commodities were within the scope of the certificate.

■■ ■ Douglas argues the Commission should be estopped from modifying its certificate because it took no steps to modify the certificate after the *Brink's* decision. The Commission argues that mere inaction by a governmental body does not estop it. Equitable estoppel is defined as the effect of a voluntary conduct of a party whereby he is precluded from asserting rights which may have otherwise existed against a party who has relied in good faith upon such conduct and has been led to change his position for the worse. (*Tyska v. Board of Education* (1983), 117 Ill. App. 3d 917, 453 N.E.2d 1344.) Usually, estoppel principles do not apply to public bodies. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 220 N.E.2d 415, *cert. denied* (1967), 386 U.S. 934, 17 L. Ed. 2d 806, 87 S. Ct. 957; *Dean Foods Co. v. Illinois Pollution Control Board* (1986), 143 Ill. App. 3d 322, 492 N.E.2d 1344.) The party asserting estoppel must have relied on the public body's actions, have no way of knowing the true facts (*Hickey*, 35 Ill. 2d 427, 220 N.E.2d 415), and an affirmative act of the public body must induce reliance. *Village of Orland Park v. First Federal Savings & Loan Association* (1985), 135 Ill. App. 3d 520, 481 N.E.2d 946.

■ Here, the Commission did not restrict Douglas' certificate after the *Brink's* decision. Additionally, Douglas did not change its operating procedure. Douglas, thus, did not rely on the Commission's actions or inactions. Equitable estoppel concepts do not apply.

■ The Commission argues Douglas is collaterally estopped from relitigating the scope of the certificate by the *Brink's* decision. The doctrine of collateral estoppel provides an adjudication on the merits of an issue by a court of competent jurisdiction which precludes relitigation of the issue in a subsequent action. (*Johnson v. Nationwide Business Forms, Inc.* (1981), 103 Ill. App. 3d 631, 431 N.E.2d 1096.) The judgment in the first suit acts as an estoppel only as to the point or question actually litigated or determined in the first suit. *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959.

■ The Commission argues that this is a "textbook illustration" of collateral estoppel. The precise holding in *Brink's* and the issue decided in *Brink's* was that the phrase "commodities general" did not include armored car commodities. The court found that the doctrine of *ejusdem generis* supported its conclusion. The issue in the instant case

ultimately is whether the language "commodities general" may be deleted from the certificate in a section 18—309 transfer proceeding. Collateral estoppel proceedings do not preclude litigation of the issue of whether the Commission correctly interpreted the Douglas certificate in the instant case.

For the above reasons, we reverse the circuit court affirming the Commission and remand to the Commission for proceedings consistent with the above disposition.

Reversed and remanded.

GREEN, P.J., and SPITZ, J., concur.