# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Hahn v. County of Kane*, 2013 IL App (2d) 120660

---

| | |
|---|---|
| Appellate Court Caption | MARJORIE C. HAHN, Successor Trustee to Robert C. Hahn, Trustee Under Trust Agreement Dated November 13, 1998, Plaintiff and Counterdefendant-Appellant and Cross-Appellee, v. THE COUNTY OF KANE and THE CITY OF ST. CHARLES, Defendants-Appellees (Internal Combustion, LLC, Defendant and Counterplaintiff-Appellee and Cross-Appellant). |
| District & No. | Second District<br>Docket No. 2-12-0660 |
| Filed<br>Rehearing denied | May 31, 2013<br>July 1, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly determined that plaintiff land trust was estopped from objecting to the expansion of an easement on plaintiff's property by defendant county and defendant city for a storm water detention facility pursuant to an intergovernmental agreement in order to facilitate the development of neighboring property that was purchased by a third defendant for a commercial development. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 10-MR-277; the Hon. Thomas E. Mueller, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Joseph P. Sauber, of Shearer & Agrella, of St. Charles, for appellant
Marjorie C. Hahn.

Jeffrey S. Torosian and Kimberly M. DeShano, both of Greenberg,
Traurig, LLP, of Chicago, for appellee Internal Combustion, LLC.

Phillip A. Luetkehans and Robert W. Funk, both of Schirott, Luetkehans
& Garner, P.C., of Itasca, for appellee the City St. Charles.

Panel

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Birkett concurred in the judgment and
opinion.

**OPINION**

¶ 1        Plaintiff, Marjorie C. Hahn, successor trustee of the Robert C. Hahn Trust, dated November 13, 1998[1] (collectively, Hahn), appeals from the trial court's orders (1) finding in favor of defendant Internal Combustion, LLC (IC), on its affirmative defense of waiver; (2) finding in favor of defendant the City of St. Charles (City) on its affirmative defenses of waiver and estoppel, and adequate remedy at law; and (3) entering judgment in favor of all defendants based on those findings. IC cross-appeals the orders of the trial court finding against IC on its affirmative defenses of *laches* and unclean hands. We affirm.

¶ 2                                        I. BACKGROUND

¶ 3        This case arose from IC's intended expansion and use of the County of Kane's (the County) storm water detention facility, located on an easement on land owned by Hahn, for the storm water drainage and detention needs of IC's auto dealership near the intersection of Randall Road and Route 64 in St. Charles. In 2005, Hahn conveyed to the County (in addition to a strip of land in fee simple and some temporary easements) an exclusive and permanent easement on approximately 3.2 acres of Hahn's property for "storm water drainage, retention, detention and conveyance, and all things appurtenant thereto." The

_____

        [1]Marjorie C. Hahn, as trustee of the Marjorie C. Hahn Trust, dated November 13, 1998, filed a petition for substitution as plaintiff and counterdefendant-appellant and cross-appellee, averring that, on March 12, 2013, all rights in the real estate at issue in this case had been assigned and transferred from the Robert C. Hahn Trust, dated November 13, 1998, to the Marjorie C. Hahn Trust, dated November 13, 1998. We hereby grant the petition for substitution.

permanent easement extended to the "respective heirs, successors and assigns" of Hahn and the County. Later that year, Hahn entered into an agreement to sell some nearby property to Resnick Acquisition Corp., the predecessor-in-interest of IC (collectively IC), which planned to open an auto dealership. IC applied to the City for a special use permit in January 2006, seeking to operate "One or more new auto dealerships" on the property, which was currently zoned for "Limited Manufacturing." Hahn, by James Cooke, the trust's attorney and authorized agent, signed the application as "Record Owner." The sale of the property closed in December 2006, but the next several years were spent planning, financing, and obtaining permits. Meanwhile, in 2006, the County and the City began negotiations involving an intergovernmental agreement (IGA) regarding improvements to Randall Road north from Route 64, including the expansion of the County's storm water detention facility. The IGA was finalized in November 2006. Among other things, the IGA required the County to construct on the Hahn property a storm water detention facility with a capacity of 11 acre-feet. The County agreed to permit the City to expand the capacity to 16.6 acre-feet in the future "if adjacent development" desired to manage its storm water with a facility on the encumbered property. Such adjacent development would be allowed to utilize up to 4 acre-feet of the expansion, while 1.6 acre-feet would be reserved for the County. The City agreed to pay for such expansion of the facility and to maintain the facility "at its sole cost and expense."

¶ 4        In May 2010, construction of the auto dealership began, along with expansion of the storm water detention facility. In June 2010, Hahn filed a complaint for declaratory judgment and other relief and a petition for a temporary restraining order (TRO) and a preliminary injunction, seeking to enjoin the expansion of the storm water detention facility.[2] The trial court denied the request for a TRO, and IC filed a counterclaim against Hahn. Hahn subsequently filed a three-count amended complaint seeking injunctive relief and the prevention of the use of the property for detention of storm water from the IC property. Defendants all filed answers and raised various affirmative defenses, including *laches*, waiver, unclean hands, failure to exhaust administrative remedies, and adequate remedy at law. Following a bench trial, the trial court found in favor of defendants on all three counts of Hahn's amended complaint, finding that the easement was "available not only to Kane County, as grantee, but also to the county's heirs, successors and assigns." As there were "no capacity limitations applicable to the county's assigns, *** there was no reason for [IC] to seek [Hahn's] approval of its use of the detention facility." The trial court also noted that the natural flow of rainwater ran from the IC property onto the encumbered Hahn property. While the trial court found that Hahn, through Cooke, was aware as early as 2007 of IC's desire to use the easement for its storm water detention but did not express opposition until 2010, the court did not base its decision on the defense of *laches*, nor did it make any initial finding that Hahn had any rights that were waived or forfeited by *laches*. The court did not

[2]The excavation, grading, and drainage work required to expand the storm water detention facility continued; 5 acre-feet of dirt were removed from the encumbered Hahn property and two pipes were laid from the IC property onto the easement; one pipe extended 100 to 150 feet onto the property, while the other ran 50 to 60 feet onto the land.

even address any of the other defenses. Hahn appealed, and this court reversed, concluding that the trial court erred in entering judgment in defendants' favor based on its finding that IC was an assign of the County under the easement; however, we remanded the cause for the trial court's consideration of defendants' affirmative defenses, which the trial court had not reached or considered. See *Hahn v. County of Kane*, 2012 IL App (2d) 110060.

¶ 5        On remand, the parties briefed and argued the issue of the affirmative defenses. On May 18, 2012, the trial court found that an adequate remedy at law existed in the form of money damages (County and City affirmative defenses) and that waiver (IC) and equitable estoppel (City) were also proven. The trial court therefore entered judgment in favor of defendants on all counts of Hahn's complaint. The court specifically made no findings regarding the defenses of failure to exhaust administrative remedies (County and City), *laches* (IC), and unclean hands (IC).

¶ 6        On May 31, 2012, Hahn filed a motion entitled "Motion for Ruling on Affirmative Defenses and Other Relief" in which she argued that the trial court "should have entered judgment in favor of defendants and against plaintiff with respect to the applicable affirmative defenses" that the court had found proven. Therefore, Hahn prayed that the trial court "[m]odify" its May 18 order to reflect the judgment entered with respect to each of the defendant's affirmative defenses on which it had ruled. Further, Hahn requested the court to rule on the affirmative defenses on which it had not ruled in the May 18 order. On June 7, the trial court ordered that its judgment of May 18 "stands" for the reasons stated on the record on May 18 and June 7. The trial court specifically found in favor of all three defendants on the defenses of estoppel. The court also specifically found that "the defenses failed on the failure to exhaust administrative remedies" and that "the evidence did not support finding in favor of the defendants on *laches*."

¶ 7        The record also contains an order dated June 14, 2012, which references "Plaintiff's and Defendant, Internal Combustion, LLC's Joint Motion for Determination of Unclean Hands Defense," although there is no such motion in the record. In this order, the trial court found that "IC failed to prove the affirmative defense of unclean hands."

¶ 8        Hahn now appeals the trial court's orders of May 18 and June 7; IC cross-appeals from the orders of June 7 and June 14 "to the extent that the trial court rejected IC's Affirmative Defenses of *Laches* and Unclean Hands."

¶ 9                                    II. APPEAL

¶ 10        Both the City and IC asserted affirmative defenses purportedly involving waiver. The City's third affirmative defense stated as follows in relevant part:

"1. On or about January 26, 2006, Defendant Internal Combustion submitted a Special Use Application to the City to permit [*sic*] which was signed by Plaintiff as the owner of record. ***

2. At all times relevant, Plaintiff knew that the project contemplated by the special use application would utilize the Hahn Trust property for purposes of storm water detention.

-4-

3. Plaintiff has *waived its right and is estopped* from challenging the City's decision to permit Defendant Internal Combustion to utilize the Hahn Trust Property for purposes of storm water detention." (Emphasis added.)

IC's third affirmative defense, entitled "Waiver," stated:

"In late 2005, IC's predecessor-in-interest, Resnick Acquisition Corp., and the Hahn Trust entered into an agreement by which IC would purchase the IC Parcel. Prior to the closing of that transaction, in January 2006, IC and Hahn Trust applied to St. Charles for a special use permit for the IC Parcel. It was clear during the application process that IC intended to use the Easement and stormwater detention facility located on the Hahn Property for stormwater drainage from the IC Parcel. St. Charles held several months of deliberations and public hearings related to the special use application. In April 2006, St. Charles issued an ordinance granting a special use permit for the IC Parcel to both IC and the Hahn Trust. The Hahn Trust was well aware of IC's plans to use the Easement over four years ago. By failing to notify IC of its objection to IC's plans to use the Easement, even after participating in the special use application to St. Charles, the Hahn Trust *knowingly and intentionally waived* its right to assert a claim regarding IC's use of the Easement." (Emphasis added.)

¶ 11     Waiver and estoppel are different defenses with different elements of proof, and both the City's and IC's third affirmative defenses improperly muddled the two. Waiver is commonly defined as "the intentional relinquishment of a known right." *Ryder v. Bank of Hickory Hills*, 146 Ill. 2d 98, 104 (1991). It may be made by an express agreement or it may be implied from the conduct of the party who is alleged to have waived his right. *Id.* at 105. Implied waiver of a right must be proved by a clear, unequivocal, and decisive act of the party alleged to have committed the waiver. *Id.* An implied waiver may arise where the party against whom waiver is asserted pursues a course of action or acts in such a way that demonstrates his intention to waive a right, or his actions are inconsistent with any intention other than waiving the right. *Id.*

¶ 12     On the other hand, equitable estoppel has been defined as the effect of a person's conduct "whereby the person is barred from asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse." *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (2001). It is typically invoked "where a person by his or her statements and conduct leads a party to do something that the party would not have done but for such statements and conduct." *Id.* Equitable estoppel involves, among other things, an element of "fraud" (though not necessarily fraud "in the strict legal sense or done with the intent to mislead or deceive" (*id.* at 314)) and may arise:

" 'from silence as well as words. It may arise where there is a duty to speak and the party on whom the duty rests has an opportunity to speak, and, knowing the circumstances, keeps silent. [Citations.] It is the duty of a person having a right, and seeing another about to commit an act infringing upon it, to assert his right. He cannot by his silence induce or encourage the commission of the act and then be heard to complain.' " *Id.* (quoting *Bondy v. Samuels*, 333 Ill. 535, 546 (1929)).

¶ 13        Both of the affirmative defenses asserted that Hahn "waived its right" to assert a claim regarding IC's use of the easement, but both defenses clearly described estoppel. The City further muddies the picture by arguing that, because of her waiver, Hahn "is estopped" from challenging the City's decision to allow IC to use the Hahn property. However, the character of a pleading should be determined from its content, not its label. *In re Haley D.*, 2011 IL 110886, ¶ 67. Despite the mislabeling of these defenses, we can clearly analyze their substance, as estoppel.

¶ 14        Hahn first argues that these defenses made "allegations only concerning the Hahn Trust's participation in the application for the special use permit." Hahn then proceeds to address the limited extent of its own participation in the permit process, stating that its only participation "was signing the special use application *** as the owner of the property." However, these defenses cannot be read so myopically. The defenses did not assert estoppel because of Hahn's alleged participation in the application itself; they alleged estoppel because Hahn: "knew that the project contemplated by the special use application would utilize the Hahn Trust property for purposes of storm water detention" (City); and knew "during the application process" and "over four years ago" that IC intended to use the detention facility on the Hahn property and "fail[ed] to notify IC of its objection to IC's plans to use the Easement" (IC). While these allegations were couched within a description of the application process, the application itself is not a limiting factor in the analysis of these defenses, as the defenses alleged facts beyond the mere application process.

¶ 15        Hahn next argues that the trial court found these defenses proved based on a theory "not pled." According to Hahn, "IC and the City can not plead as grounds for waiver and estoppel the Hahn Trust's participation in the special use application and then obtain a ruling in their favor based on different grounds." Hahn bases this argument on the trial court's statement made before its ruling on the affirmative defenses:

> "And to start out, I just want to–I do want to say that the trial court is of firm belief that I can consider any and all evidence presented at trial that is not objected to and excluded, and I think that is important to lay out at the onset because there is a suggestion made that if it wasn't pled the Court can't consider it. Well, if it wasn't pled and it wasn't objected to at the time of trial then the Court certainly may consider it, because counsel waived that argument by failing to object to the admissibility of the evidence at the time of trial."

¶ 16        Proof without pleadings is as defective as pleadings without proof. *People ex rel. Klaeren v. Village of Lisle*, 352 Ill. App. 3d 831, 846 (2004). However, it is just as axiomatic that a trial court is to weigh conflicting evidence, consider that evidence in view of *all the evidence in the case*, and make findings based on that evidence. See *West Shore Associates, Ltd. v. American Wilbert Vault Corp.*, 269 Ill. App. 3d 175, 180 (1994). While the trial court may have inartfully stated its intent, the court never stated that it would grant an affirmative defense that was not pleaded. In addition, as we have already stated, the affirmative defenses were not pleaded only in terms of Hahn's participation in the special use application itself. The trial court's inquiry was not limited, as Hahn argues, to "whether by signing the application for the special use permit the Hahn Trust waived or is estopped to object to the use of its property by IC." The trial court also had to inquire whether Hahn was aware some

four years prior, during the application process, that IC intended to use the easement and storm water detention facility located on the Hahn Property, failed to object, and should now be estopped from asserting a claim regarding that use. All evidence that was properly presented at trial and that was not objected to and excluded must be considered in making that determination. With that perspective, we determine that Hahn's argument is without merit, and we do not agree that the trial court's ruling was based on an unpleaded theory.

¶ 17      "To establish equitable estoppel, [a party] must demonstrate that: (1) the other person concealed or misrepresented material facts; (2) the other person knew at the time [he] made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when *** acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied on the representations in good faith to [his] detriment; and (6) the party claiming estoppel would be prejudiced by [his] reliance on the representations if the other person is permitted to deny the truth thereof." *Geddes*, 196 Ill. 2d at 313-14. The question of estoppel depends on the facts of the case, and the party claiming estoppel must prove it by clear and unequivocal evidence. *Id.* at 314. We will not disturb a trial court's decision on the issue of estoppel unless it is against the manifest weight of the evidence. *In re Marriage of Mancine*, 2012 IL App (1st) 111138, ¶ 26.

¶ 18      Our review of the evidence leads us to conclude that the trial court did not err in finding that the City and IC proved their third affirmative defenses. While Cooke testified that he first learned of IC's plan to use the detention facility in January 2010, he also acknowledged receiving a letter from Robert Neiman, IC's attorney, dated June 29, 2006, before IC had closed on its purchase of the parcel from Hahn and after IC had applied for the special use permit. In paragraph 2, Neiman stated:

"We have retained an engineer and paid for Kane County's engineer *to try and gain approval for our use of the detention pond currently on the north end of the parcel*. The County is studying the matter but as of yet has not made a determination as to whether we will be able to use the pond for drainage. The engineers agree that it is feasible. Our alternative would be to purchase a sliver of land directly west of the parcel and the cost of doing that is approximately $1,000,000. Clearly we would like to avoid spending that money." (Emphasis added.)

Cooke acknowledged that he understood the reference to the detention pond to be to the pond on the Hahn property. He further acknowledged that, after he received that letter, he never told Neiman that IC could not use the detention pond or that IC needed to talk to Hahn about using the pond. Cooke stated, "I had no discussions with Mr. Neiman regarding detention at any time," and agreed that he never brought it up in correspondence, either.

¶ 19      Ronald Bild, the real estate broker for IC when it purchased the land from Hahn, testified about a telephone conversation that he had with Cooke in mid-July, 2006:

"A. [Mr. Bild:] I think I, you know, told him a little bit about your trials and tribulations with KDOT [Kane County department of transportation] and their kind of negative attitude towards us even using the detention, let alone enlarging it, agreeing to enlarging it, you know, for us; that the–oh, the cost–oh, that KDOT was looking for us

-7-

to pay the whole cost of constructing this thing, which, again, was extraordinary and would have a negative impact on the viability of a development of this property.

Q. [Ms. DeShano:] And what did Mr. Cooke say in response to that?

A. He said he had an understanding–an agreement, not an understanding, an agreement to utilize the detention–this property to utilize that detention and that they would only have to pay the cost–whoever the developer is, be it the Hahns or Resnick or whoever, would only have to pay that portion of developing that detention that was attributable to the parcel itself, the subject parcel, the Hahn parcel.

Q. *** So you believe Mr. Cooke told you that the parcel that Resnick was purchasing had the rights to use the detention?

A. Yeah. He said he had negotiated, you know, the rights to use the detention–

Q. Okay.

A. –and only pay the costs thereof attributable to the–you know, to the Hahn parcel.

* * *

Q. *** During this conversation of Mr. Cooke where he is explaining the detention rights to you, did he ever say you're going to need the Hahn Trust permission to use the detention?

A. No.

Q. Did he ever say it might cost you something, you might have to pay the Hahn Trust to use it?

A. No.

Q. Did he ever say the Hahn Trust wouldn't let you use it?

A. No."

¶ 20    Brian Townsend was the City administrator and was involved in the IGA negotiations beginning in early 2006. In August 2006, during the IGA negotiations, he spoke to Cooke by telephone and made Cooke "aware of Internal Combustion's desire to utilize the Hahn Trust property for detention." Cooke did not object at that time. The City sought the use of the Hahn property in order to facilitate IC's location of its dealership in St. Charles.

¶ 21    This evidence is clear and unequivocal that Cooke knew in mid-2006 that IC intended to use the Hahn property for storm water detention purposes, yet he remained silent as to Hahn's purported objection to that use, and both the City and IC relied on that silence to their detriment. Cooke, on behalf of the trust, had " 'a duty to speak and *** [had] an opportunity to speak, and, knowing the circumstances, [kept] silent.' " *Geddes*, 196 Ill. 2d at 314 (quoting *Bondy*, 333 Ill. at 546). There is evidence that, based on Cooke's silence, the City entered into the IGA with the County, which required the City to pay for the expansion of the storm water facility and to maintain the facility "at its sole cost and expense." Based on Cooke's silence *and* his affirmative misrepresentation to Bild regarding the "agreement" that the IC property could utilize the detention facility and pay only the cost of developing that portion of the facility that was attributable to the parcel itself, IC concluded its purchase of the property from Hahn and continued the planning and financing of the project and obtaining

permits in order to locate its dealership on that property. Cooke spoke for the trust, and he failed to speak up, or to speak truthfully, when he should have; Hahn cannot now be heard to complain. The trial court's finding that the City and IC proved estoppel is not against the manifest weight of the evidence; therefore, the court's entry of judgment in favor of defendants is not in error.

¶ 22 This court can affirm on any basis found in the record. *Mutual Management Services, Inc. v. Swalve*, 2011 IL App (2d) 100778, ¶ 11. Because we have found that the trial court did not err in finding that the City and IC proved the affirmative defense of estoppel, we affirm its judgment in favor of defendants without addressing the issue of adequate remedy at law.

¶ 23                                III. CROSS-APPEAL
¶ 24 In addition, because we have found that the trial court has properly entered judgment in favor of defendants, we need not address IC's cross-appeal.

¶ 25                                IV. CONCLUSION
¶ 26 For these reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 27 Affirmed.