2022 IL App (1st) 201142-U

THIRD DIVISION
March 16, 2022

No. 1-20-1142

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(i).

_____

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| MARSHALL SPIEGEL, | ) | |
| | ) | Appeal from |
| Plaintiff-Appellant, | ) | the Circuit Court |
| | ) | of Cook County |
| v. | ) | |
| | ) | 1998-M1-040723 |
| 1618 SHERIDAN ROAD CONDOMINIUM ASSOCIATION, | ) | |
| INC., Dr. Marybeth Gerrity, Gene Epstein, Jan Anderson, and | ) | Honorable |
| Board of Directors of the 1618 Sheridan Road Condominium | ) | Franklin U. Valderrama, |
| Association, | ) | Judge Presiding |
| | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justice Ellis concurred in the judgment.
Presiding Justice Gordon specially concurred.

O R D E R

¶ 1    *Held*: Litigant who entered into settlement agreement prohibiting him from posting any documents "relating" to his condo building in the windows of his unit effectively waived his First Amendment rights and was in violation of the agreement when he posted remarks about the condo board and other aspects of the association.

¶ 2    Marshall Spiegel, who is a unit owner and resident of an eight-unit condominium building in Wilmette, Illinois, has been in and out of litigation with the condominium association, 1618 Sheridan Road Condominium Association, Inc., for more than 20 years. Spiegel has filed

numerous suits regarding the operations and maintenance of the association's common areas. In this suit, in 2000, Spiegel and the association reached a settlement agreement which obligated him "not to post any documents relating to the 1618 Sheridan Road building on the windows of his unit, nor to place any such documents immediately adjacent to any windows of his unit which are adjacent to the front entrance of the building with the intent that such documents be readable to passersby." We are using the term "association" as a collective reference to the parties Spiegel sued, which included the condominium association, its board of directors, and the three individuals who were then serving on the board. In 2020, the circuit court ordered Spiegel to remove all the documents he had posted in his windows in violation of the settlement's terms. He appeals that order. He contends that his "objectionable" window signs are protected by the First Amendment and section 18.4(h) of the Illinois Condominium Property Act, which forbids condominium rules or regulations which impair constitutionally protected speech. U.S. Const. amend. I; 765 ILCS 605/18.4(h) (West 2020). He also contends that he did not waive his First Amendment rights by entering into the settlement. He further argues that the settlement terms prohibit him from posting documents about the building itself (the structure) and do not restrict him from posting signs about his fellow unit owners, board members, board meetings or actions, the elevator, and the swimming pool, or having objects on display. His fourth argument is that the association waived or was estopped from claiming that he breached the settlement.

¶ 3    Spiegel initiated this suit against the association in 1998. In his fifth amended complaint, Spiegel alleged, in pertinent part, that the association had not opened the outdoor pool during the 1999 season, contrary to the association's rules and regulations. In August 2000, Spiegel and the association reached the settlement agreement that is now at issue. The settlement provided that for

so long as Spiegel remained a unit owner, the association's rules and regulations would state that the pool would be open each year no later than the Friday before Memorial Day and close each year no earlier than the Tuesday after Labor Day, subject to weather, repair schedules and budgetary constraints. The settlement further provided:

> "Spiegel additionally agrees not to post any documents relating to the 1618 Sheridan Road building on the windows of his unit, nor to place any such documents immediately adjacent to any windows of his unit which are adjacent to the front entrance of the building with the intent that such documents be readable to passersby."

¶ 4    In December 2000, the parties modified the agreement slightly to indicate that the pool would open annually no earlier than May 1 and close annually no later than October 15, subject to weather, repair schedules and budgetary constraints.

¶ 5    In an agreed order, the circuit court ordered that the settlement agreement and the first amendment to the settlement agreement be spread of record, dismissed Spiegel's claims with prejudice, ordered the association to amend its declaration as described in the settlement, and expressly retained jurisdiction to enforce the terms of the settlement. See *Board of Trustees of Harvey Police Pension Fund v. City of Harvey*, 2017 IL App (1st) 153095, ¶ 18, 79 N.E.3d 636 (an Illinois trial court possesses the power to retain jurisdiction to enforce a settlement agreement); *Director of Insurance ex rel. State v. A&A Midwest Rebuilders, Inc.*, 383 Ill. App. 3d 721, 723, 891 N.E.2d 500, 502 (2008) (drawing the distinction between modification and enforcement of an order, and stating that an Illinois trial court has the inherent authority to enforce its own orders and that its jurisdiction to do so is retained indefinitely).

¶ 6    In 2020, the condominium board's president, James L. Waite, stated in an unopposed sworn

statement (*see* 735 ILCS 5/1-109 (West 2000)) that on numerous occasions since entering into the settlement, Spiegel posted signs that were visible to passersby through the windows of his ground floor unit. Spiegel had not attached the signs to the glass-walled corner of his unit. He tacked his "inflammatory," handwritten signs to a six-foot-tall vampire mannequin and other objects that he placed in close proximity to the glass. Waite stated that Spiegel posted two signs in 2014 and two signs in 2018, and that in 2018, the board sent Spiegel written notice that his signs violated the settlement. In April 2020, Spiegel began adding signs and objects to his window display at least twice a month, including on April 20, April 22, April 30, May 31, June 1, June 2, June 5, June 8, June 17, and June 18. The signs contained remarks against board president Waite, who resided in Unit 8; and board secretary William Hall, who resided in Unit 9 (the penthouse). Spiegel also singled out individual members of his property association, including Corrine McClintic, the spouse of board treasurer William McClintic. Spiegel later added photographs of the three board members which were labelled with their names. In addition to the vampire mannequin, Spiegel added three imitation gravestones and an outdoor lounge chair to his corner display.

¶ 7     The sign that Spiegel posted on April 22, 2020 read, "WELCOME TO THE WAITES & HALLS HOUSE OF HORRORS WHERE THE PHONY BOARD & CREEPY CORRINE McCLINTIC ABUSES THE HOARDS PROTECT UNIT OWNERS RIGHTS." The sign that Spiegel added to his window display on April 30, 2020 included the name and photo of board president Waite and indicated, "I'M 'LITTLE' JIMMY WAITE HENPECKED BATTERER & STALKER OF RESIDENT & SHYSTER PRESIDENT BROKEN ASSOC, ELEVATOR & BOARD." Spiegel's sign on May 31, 2020 was affixed to an imitation gravestone and stated:

> "R.I.P. 1. WORKING ELEVATOR 2. HOT WATER OR RUNNING WATER 3. COURT

ORDERED SWIMMING 4. AN HONEST FUNCTIONING MANAGEMENT 5. HONEST OPEN MEETINGS & ELECTIONS 6. A SAFE BUILDING FREE OF ASSAULTS, VANDALISM, SLASHING OR HOME INVASIONS & THEFTS 7. NEIGHBORS WHO ARE NOT IMPLICATED IN SECURITIES FRAUD 8. UP UNTIL 5 YEARS AGO LOW ASSESSMENTS."

His sign on June 1, 2020 was attached to an additional imitation gravestone and read, "R.I.P. VICTIMS OF BOARD ABUSE *DONNY, FRANKIE, *ARNEY, *JEANNIE, TIMMY, MY SON IS IMPORTANT AS YOURS. STOP BLOCKING MY EXIT DOOR & GASING US WITH YOUR JEEP BECAUSE WE'RE JEWS COVID 0 BOARD DEATHS *3 JEWISH YOUTUBE.COM/channel/[a series of letters and numbers]." Spiegel's sign on June 2, 2020 was attached to a third imitation gravestone and said, "R.I.P. PRUDENT SPENDING ON NON-FRIVOLOUS EXPENSES & AIR & WATERTIGHT WINDOWS & COMMON ELEMENTS QUIET ENJOYMENT WITHOUT CONSTRUCTION MAINTAINED FOYER FLOOR TILES NORMAL SANE NEIGHBORS ARE HONEST." The sign that Spiegel added on June 5, 2020 was attached to a blue lounge chair and read, "STOP SLASHINGS OF UNIT OWNERS 1ST AMENDMENT RIGHTS & POOL CHAIR(S) INTENTIONALLY DIMENTED [(sic)] WAITE #8 CROOKED McCLINTIC #5 FIRE HAZARD HALL: PENTHOUSE."

¶ 8    On June 18 and 19, 2020, respectively, Spiegel filed a petition to enforce the portion of the settlement requiring the association's pool to be open during the summer months (despite the pandemic) and the association filed a counterpetition to enforce the portion of the settlement precluding Spiegel from posting signs about the 1618 Sheridan Road building. On July 13, 2020, the court granted Spiegel's petition and ordered that the pool be opened within 14 days. On

September 17, 2020, the court granted the association's counterpetition and gave Spiegel 72 hours "to remove all documents posted in the windows of his unit in violation of his obligations under the Settlement Agreement." Spiegel took this appeal. As we summarized above, he presents four arguments for reversal.

¶ 9      Our first consideration is Spiegel's argument about the meaning of the settlement's prohibition on "post[ing] any documents relating to the 1618 Sheridan Road building on the windows of his unit *** [or] immediately adjacent to the front entrance of the building with the intent that such documents be readable to passersby." Spiegel contends that this language does not address all of his communications about all issues or people because it prohibits him only from posting "documents" about the "building." He contends the circuit court improperly extended the definition of "documents" to include the mannequin and other objects he placed in his windows. He also points out that, as used in the Illinois Condominium Property Act, the term " 'Building' means all structures, attached or unattached, containing one or more units." 765 ILCS 605/2(t) (West 2020) (defining the terms "[a]s used in this act"). He argues that the term "building" means the physical residential structure on Sheridan Road and does not encompass other improvements to the real property such as the elevator or pool; and does not concern other subjects such as the building's residents, condominium board of managers, or meetings of the condominium association. His conclusion is that his window signs airing his personal criticisms of the three board members, and various unit owners, building residents, and property conditions were not prohibited.

¶ 10      Spiegel waived these arguments by not presenting them in the trial court and by making them for the first time on appeal. *Susman v. North Star Trust Co.*, 2015 IL App (1st) 142789, ¶ 41,

30 N.E.3d 622. In the trial court, he argued only that he read the settlement to mean that he was giving up the right to post "documents filed in this litigation." Waiver aside, the arguments are unpersuasive.

¶ 11    A settlement agreement between parties to a lawsuit is a contract and is subject to the principles of contract interpretation. *City of Chicago Heights v. Crotty,* 287 Ill. App. 3d 883, 885, 679 N.E.2d 412, 413 (1997). Any question about the construction, interpretation, or legal effect of a contract is a question of law which we address *de novo*. *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1020, 905 N.E.2d 920, 924 (2009). The primary goal of contract interpretation is to give effect to the intent of the parties. *City of Chicago Heights*, 287 Ill. App. 3d at 885, 679 N.E.2d at 413. The contracting parties' intent is determined from the language they used in their agreement. *City of Chicago Heights*, 287 Ill. App. 3d at 885, 679 N.E.2d at 413. When a contract is clear and unambiguous, its terms are read with their ordinary and popular meaning. *Omnitrus Merging Corp. v. Illinois Tool Works, Inc.*, 256 Ill. App. 3d 31, 34, 628 N.E.2d 1165, 1168 (1993); *City of Chicago Heights*, 287 Ill. App. 3d at 885, 679 N.E.2d at 413. The ordinary and popular meaning of terms may be found in a dictionary. *Gaudina v. State Farm Mutual Automobile Insurance Co.*, 2014 IL App (1st) 131264, ¶ 18, 8 N.E.3d 588 (looking to American Heritage Dictionary for the definition of " 'primarily' "); *City of Chicago Heights*, 287 Ill. App. 3d at 885, 679 N.E.2d at 413 (using Black's Law Dictionary to determine the meaning of " 'shall' ").

¶ 12    Spiegel contends that although only "documents" were prohibited by the settlement, the term was erroneously expanded to include the vampire mannequin and other objects that Spiegel displayed through the glass walls of his condominium unit. Spiegel, however, has misread the

circuit court order, quoted above, which required him to take down only "documents" within 72 hours. The circuit court enforced the settlement agreement as it was written. The circuit court subsequently ordered Spiegel to remove a blue paper surgical mask from the vampire mannequin in his window, not because it was a mask, but because Spiegel had added a written statement about the condominium board to the mask. A "document" is defined as "a writing conveying information." https://www.merriam-webster.com/dictionary/document (last visited Jan. 4, 2022). By writing "board order muzzle" on the mask, Spiegel turned the innocuous paper object into a paper "document[] relating to the 1618 Sheridan Road building." This handwritten sign was not only prohibited by Spiegel's settlement with the association, it was also contrary to the court order mandating that he "remove all documents posted in his windows in violation of his obligations under the Settlement Agreement." Consequently, this additional "document" had to be removed.

¶ 13    Furthermore, Spiegel's focus on the statutory definition of a condominium "building" is misdirected because the settlement agreement is neither about a "building" nor about the statute regarding condominium properties. Instead of reading one of the contract's words in insolation, we read words and phrases in the context of the full contract. *Thompson v. Gordon*, 241 Ill. 2d 428, 441, 948 N.E.2d 39, 47 (2011) (instead of focusing on one provision or clause in isolation, a reviewing court will read the entire contract in context and construe it as a whole). The settlement agreement is a five-page document that resolves Spiegel's equitable claims against the association. On the one hand, the agreement imposes obligations on the association, by setting a calendar for the annual opening and closing of the pool, requiring the installation of additional landscaping, and imposing conditions upon the use of the patio area, barbeque grills on the patio and unit balconies, and power washing equipment in the garage. In exchange for these obligations, Spiegel,

on the other hand, is to dismiss his claims against the association and becomes subject to the clause at issue. There is no mention in the settlement about the building–the physical structure–in which the individuals reside. Moreover, no part of the settlement agreement invokes the statute. Thus, instead of relying on a definition the General Assembly included when it adopted a particular statute, the agreement's language is to be given its ordinary and popular meaning.

¶ 14    The operative contract phrase in the five-page agreement is "post[ing] any documents *relating* to the 1618 Sheridan Road building on the windows of his unit *** [or] immediately adjacent to the front entrance of the building with the intent that such documents be readable to passersby." (Emphasis added.) A dictionary tells us that the term "relating" has an ordinary and popular meaning of "to have relationship or connection." https://www.merriam-webster.com/dictionary/relating (last visited Jan. 4, 2022). Any statement "*relating* to the 1618 Sheridan Road building" (emphasis added) is, therefore, a statement which has a relationship or connection to the 1618 Sheridan Road building.

¶ 15    In 2020, Spiegel posted his opinions about the condominium board members and other unit owners, the security of the building's residents, and other aspects of the property, like its maintenance needs or management (the condition of the association's elevator, pool, water supply, and air circulation). The condominium board manages the building and governs use of the building, and thus, the board has a relationship or connection to the building. Spiegel's posted remarks about the condominium board violated the settlement terms. The condominium association is comprised of the owners of the building's units and thus, the condominium association has a relationship or connection to the building. Spiegel's signs about the condominium association violated the settlement terms. The residents reside in the building and thus, the

residents have a relationship or connection to the building. Spiegel's signs about the residents were prohibited by the settlement. All other aspects of ownership, residence, possession, or use of a unit, common area, or resource of the 1618 Sheridan Road building, such as its elevator, pool, water supply, and air circulation, and the management or maintenance of those aspects have a relationship or connection to the building. Spiegel's signs about these aspects violated the settlement. Statements that are prohibited by the settlement include any statement about the board as a whole or its individual members; the condominium association or any of its individual members; residents collectively or individually; maintenance needs or costs; and all other aspects of ownership, residence, possession, or use of any unit, common area, or resource of 1618 Sheridan Road. All of the messages that Spiegel displayed and which we quoted above were messages "relating to the 1618 Sheridan Road building" and all of them violated the terms of his settlement with the association.

¶ 16    For these reasons, if Spiegel had not waived his arguments that the "documents" he posted in his windows were permissible as long as the signs were not about the "building," then we would reject them on the merits.

¶ 17    Our second main consideration is Spiegel's argument that the First Amendment to the Constitution of the United States protected his "objectionable displays." U.S. Const. amend. I. He analogizes his displays to the mock graveyard in *Purtell v. Mason*, 527 F.3d 615, 618 (7th Cir. 2008), in which a couple who resided in Bloomingdale, Illinois, wrote unflattering messages about some of their neighbors on wooden tombstones which they placed on their front lawn, facing the sidewalk. The couple was in a dispute with those neighbors about storing a 38 foot long recreational vehicle for more than year across the width of the couple's property. *Purtell*, 527 F.3d

at 617. Spiegel argues his window displays were similar to the *Purtell* tombstones and were protests that were constitutionally protected speech.

¶ 18    We will assume only for the purposes of argument that Spiegel's handwritten messages were protests that were generally subject to the protection afforded by the First Amendment. The question becomes whether Spiegel waived his First Amendment rights by entering into the settlement agreement. He contends that the circuit court relied on Illinois contract law to find that waiver had occurred. He contends this was error because, according to *Brookhart v. Janis*, 384 U.S. 1, 4 (1966), "The question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law." He does not argue, however, that he did not knowingly, intentionally, and voluntarily enter into the settlement terms, thus effectively relinquishing his First Amendment rights with respect to the documents relating to the 1618 Sheridan Road building.

¶ 19    The waiver standard that Spiegel argues for and contends was not applied in the circuit court is the standard that was applied in those proceedings. Illinois law indicates, "Individuals generally may waive substantive rules of law, statutory rights, and even constitutional rights enacted for their benefit *** so long as the waiver is knowing, voluntary, and intentional." *In re Estate of Ferguson*, 313 Ill. App. 3d 931, 937, 730 N.E.2d 1205, 1210 (2000) (regarding waiver of statutory rights in spouse's estate) (citing *Raimondo v. Kiley*, 172 Ill. App. 3d 217, 224-25, 526 N.E.2d 457, 461 (1988) (regarding criminal defendant's waiver of personal right); *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 462, 654 N.E.2d 1109, 1118 (1995) (regarding contracting party's waiver of right to strict performance). The federal authority Spiegel relies on similarly states, "There is a presumption

against the waiver of constitutional rights, [citation], and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'" *Brookhart*, 384 U.S. at 4.

¶ 20    Also pertinent here is:

"A waiver is permanent and cannot be withdrawn [(citation)], unless the waiving party unequivocally shows that the waiver was unknowing, involuntary, or unintentional. For example, a waiver may be withdrawn where the waiving party shows that the waiver was given under mistake or misapprehension of a material fact, or where the waiver resulted from coercion or another party's fraudulent misrepresentations." *In re Estate of Ferguson*, 313 Ill. App. 3d at 937, 730 N.E.2d at 1210.

¶ 21    The settlement agreement states in pertinent part:

"E. Review by Attorney. Spiegel warrants that he has not relied upon the advice of the Association, Gerrity, Epstein or Anderson or any representative, agent or attorney of them as to the legal or other consequences which may attach because of his assent to the terms of this Agreement. Further, Spiegel acknowledges that he is represented by counsel and that his counsel has reviewed and approved the provisions, the terms and [the] conditions [contained in this Agreement].

* * *

G. Waiver of Construction. Each of the parties to this Agreement acknowledge that it has been negotiated at arm[']s length among persons knowledgeable in the matters dealt with herein. Accordingly, any rule of law, statute, legal decisions or common law principles which would require the interpretation of any ambiguity against the drafter is of no

application and is hereby waived."

¶ 22    Spiegel, thus, expressly acknowledged that he was represented by counsel with whom he reviewed and approved the terms and conditions contained within the settlement agreement. Read together, the contract clauses show that Spiegel knowingly, voluntarily, and intentionally agreed to refrain from posting any documents relating to the 1618 Sheridan Road building on the windows of his unit. He knowingly, voluntarily, and intentionally relinquished his First Amendment rights with respect to posting any documents "relating to the 1618 Sheridan Road building." He has not argued any grounds for withdrawal of his waiver. Spiegel has forever waived his First Amendment right to post signs in his unit windows about certain subjects.

¶ 23    Spiegel's final argument is that the association waived or is estopped from claiming that his signs violated the settlement. He argues that the association waited six years to seek judicial relief about Spiegel's signs after documenting in 2014 that Spiegel had posted two other signs. He also points out that the association threatened in 2018, two years prior to filing its counterpetition in 2020, that it would remove his window sign within 12 hours and then did not take any action when Spiegel failed to take down his own sign. He states that he "then supplemented any displays." He contends that these are instances of waiver or estoppel.

¶ 24    Determining what facts are sufficient to constitute waiver is determining a question of law. *Whalen v. K-Mart Corp.*, 166 Ill. App. 3d 339, 343, 519 N.E.2d 991, 994 (1988). As just discussed, waiver is the voluntary and intentional relinquishment of a known and existing right. *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 462, 654 N.E.2d 1109, 1118 (1995). A party may waive contractual provisions that were included for its benefit, and waiver may result from conduct which indicates that strict compliance with the

contract provisions will not be required. *In re Nitz*, 317 Ill. App. 3d 119, 130, 739 N.E.2d 93, 103 (2000). "The waiver doctrine is intended to prevent the waiving party from lulling another into a false belief that strict compliance with a contractual duty will not be required and then suing for noncompliance." *Lake County Grading*, 275 Ill. App. 3d at 463, 654 N.E.2d at 1118.

¶ 25    Waiver may be express or implied. *Lake County Grading*, 275 Ill. App. 3d at 462, 654 N.E.2d at 1118. Spiegel is not suggesting that the association expressly waived its right to enforce the settlement. As for an implied waiver, Spiegel cannot rely on inaction as grounds for an implied waiver. *Washburn v. Union National Bank & Trust Co. of Joliet*, 151 Ill. App. 3d 21, 25, 502 N.E.2d 739, 742 (1986); *Hahn v. County of Kane*, 2013 IL App (2d) 120660, ¶ 11, 991 N.E.2d 373 (implied waiver of right arises only from a clear, unequivocal, decisive act). Spiegel would need to demonstrate that the association took a clear, unequivocal and decisive act or course of conduct which showed this purpose, or that the association's conduct was inconsistent with any other intention than to waive its contractual right. *Washburn*, 151 Ill. App. 3d at 25, 502 N.E.2d at 742; *Hahn*, 2013 IL App (2d) 120660, ¶ 11, 991 N.E.2d 373, *Kane v. American National Bank & Trust Co.*, 21 Ill. App. 3d 1046, 1052, 316 N.E.2d 177, 182 (1974).

¶ 26    "The related doctrine of estoppel refers to the effect of a party's voluntary conduct which precludes it from asserting rights which might otherwise have existed against another person who has detrimentally relied upon such conduct." *Lake County Grading*, 275 Ill. App. 3d at 462, 654 N.E.2d at 1118; *Douglas Transit, Inc. v. Illinois Commerce Comm'n,* 164 Ill. App. 3d 245, 252, 517 N.E.2d 724, 728 (1987). "The difference between waiver and estoppel is that waiver is the voluntary relinquishment of a known right, whereas estoppel may arise even where there is no intention to relinquish any right." *Lake County Grading*, 275 Ill. App. 3d at 463, 654 N.E.2d at

1118.

¶ 27    Spiegel introduces the concepts of waiver and estoppel but does not support his argument with any facts. That is, Spiegel does not identify any clear, unequivocal and decisive conduct by the association which implied that the association was voluntarily and knowingly waiving its rights under the agreement. After he posted two signs in 2014 and two signs in 2018, the association sent him a written notice that the signs violated the settlement agreement. The association's written opposition was an affirmative assertion of its rights under the settlement, rather than conduct that could be construed as voluntarily and knowingly waiving its rights under the settlement. *See e.g., In re Nitz*, 317 Ill. App. 3d at 131, 739 N.E.2d at 131 (rejecting waiver argument in part because letter acknowledged receipt of other contracting party's correspondence but expressly reiterated contractual rights). In addition, beginning in late April 2020 until late June 2020, Spiegel displayed with increasing frequency signs that related to the 1618 Sheridan Road building. During this same time frame, the association and Spiegel's attorney were exchanging e-mails and written correspondence about Spiegel's conduct and the parties' legal rights. The parties ultimately petitioned and counterpetitioned the circuit court in late June of that year. The association's communications in 2020 were deliberate and definite statements to Spiegel of the association's general authority and its specific rights under the settlement document to manage and maintain the condominium property. It is simply not possible to construe the association's actions as the relinquishment of its legal rights. Spiegel wants to capitalize on the six years that passed between his first display in 2014 and the association's legal filing in 2020, but he cites no authority indicating that one must take legal action to stave off an adverse finding of implied waiver. Authority actually indicates that Spiegel cannot rely on supposed inaction and must demonstrate

that there was a clear, unequivocal and decisive act or a course of action that indicated the association was relinquishing its legal rights. *Washburn*, 151 Ill. App. 3d at 25, 502 N.E.2d at 742; *Hahn*, 2013 IL App (2d) 120660, ¶ 11, 991 N.E.2d 373; *Kane*, 21 Ill. App. 3d at 1052, 316 N.E.2d at 182. Spiegel has not done this. Spiegel's contention regarding estoppel fails for the additional reason that he does not indicate that he made any prejudicial change in reliance on any of the association's conduct. See *Lake County Grading*, 275 Ill. App. 3d at 462, 654 N.E.2d at 1118 (estoppel may be shown where a party has detrimentally relied on the other party's conduct); *Douglas Transit*, 164 Ill. App. 3d at 252, 517 N.E.2d at 728 (estoppel may occur when a party changes his position for the worse due to his good faith reliance on the other party's conduct). We reject Spiegel's waiver and estoppel arguments.

¶ 28     The circuit court's order granting the association's counterpetition to enforce its settlement agreement with Spiegel is affirmed.

¶ 29     Affirmed.

¶ 30     PRESIDING JUSTICE GORDON, specially concurring:

¶ 31     I agree with the order entered by the majority, but I must write separately on the issue of waiver claimed by Spiegel. Waiver is an important concept under condominium law. Generally, when a condominium association fails to enforce a rule or enforces rules differently as to its members, the rule can be considered waived under certain circumstances. The same would apply to a settlement agreement with one of its members. Waiver is a voluntary and intentional relinquishment of a known right. *In re Nitz*, 317 Ill. App. 3d 119, 130 (2000). Waiver can be either expressed or implied by conduct inconsistent with the intent to enforce the particular right. *In re Nitz*, 317 Ill. App. 3d at 130. The conduct claimed by Spiegel here would be implied.

¶ 32    The parties to a contract which a settlement agreement encompasses have the power to waive provisions in their agreement, and such waiver may be established by conduct indicating that strict compliance with the contract will not be required. *In re Nitz*, 317 Ill. App. 3d at 130. A trial court's finding as to whether a party has waived a right will not be disturbed unless that decision is against the manifest weight of the evidence. *In re Nitz*, 317 Ill. App. 3d at 131. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *In re Arthur H.*, 212 Ill. 2d 441, 464 (2004) (citing *In re Edward T.*, 343 Ill. App. 3d 778, 794 (2003)). In the case at bar, in support of the waiver argument, Spiegel relies exclusively on the fact that the condo board waited six years before filing a claim in court to enforce the settlement agreement.

¶ 33    However, we look at the entire conduct of the board to determine this issue. In the case at bar, the conduct of the board did not constitute a clear, unequivocal, and decisive expression of the Association's intent to abandon its right to enforce the settlement agreement. The evidence in this case shows that Spiegel posted two signs in his apartment display in 2014 and two in 2018. In 2018, the board sent Spiegel a written notice that the signs violated the settlement agreement. The Board did not show from this conduct a clear, unequivocal, and decisive expression of its intent to abandon its right to enforce the settlement agreement.

¶ 34    In April, 2020, Spiegel started to increase the amount of signs that he displayed from the window of his unit. On June 18th, 2020, Spiegel filed a petition to enforce that portion of the settlement agreement requiring the association's pool to be opened during the summer months, and the Association filed a counterpetition to enforce that portion of the settlement agreement precluding Spiegel from posting signs about the building. The letter sent by the Association in

- 17 -

2018 and its countercomplaint sufficiently shows that the board did not constitute a clear, unequivocal, and decisive expression of its intent to abandon its right to enforce the settlement agreement, and thus the waiver argument fails.